UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KELLY AUSTIN,

                    Plaintiff,

             v.

PHONE2ACTION, INC.,

                    Defendant.

---------------------------------------------------------------

**<u>MEMORANDUM & ORDER</u>**

21-CV-491 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Kelly Austin commenced the above-captioned action on January 29, 2021,

against Defendant Phone2Action.  (Compl., Docket Entry No. 1.)  Plaintiff asserts claims of

gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law

§ 290 *et seq.* ("NYSHRL") and the New York City Administrative Code, N.Y.C. Admin. Code

§ 8-101 *et seq.* ("NYCHRL").  (*Id.* ¶¶ 44–92.)  Plaintiff contends that Defendant terminated her

employment because of her gender and because she made a complaint of gender discrimination.

(*Id.*)

      Defendant moves for summary judgment as to all of Plaintiff's claims, and Plaintiff

opposes the motion.[1]  For the reasons set forth below, the Court grants the motion in part and

denies it in part.

---

[1] (Def.'s Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 24; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 24-2; Def.'s Reply in Support of Def.'s Mot. for Summ. J ("Def.'s Reply"), Docket Entry No. 32; Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 25-2.)

## I.   Background

In November of 2018, Plaintiff was hired as a Quality Assurance engineer by Defendant Phone2Action, Inc., which is a software company based in Arlington, Virginia that provides businesses and the public with a platform to be heard on political issues.  (Def.'s Local Rule 56.1 Stmt. ("Def.'s 56.1") ¶¶ 195–96, 198, Docket Entry No. 24-1.)  Plaintiff claims that while she worked for Defendant, she was treated worse than her similarly situated male coworkers by her supervisor, Matthew Morgante, and that this disparate treatment ultimately resulted in her termination.  (*See* Pl.'s Opp'n 11.)  Plaintiff also alleges that Defendant retaliated against her by terminating her employment after she complained to the head of Human Resources ("HR") about Morgante and again retaliated against her by reversing the direct deposit of her final paycheck after her attorney sent a demand letter to Defendant.  (*Id.* at 16, 24.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (same).  The role of the court "is not to resolve disputed questions of fact

but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (same). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (observing the same duty (first citing *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997); and then citing *Anderson*, 477 U.S. at 252)).

In cases that involve claims of discrimination, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). However, "the salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). Striking this balance requires that to survive summary judgment "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v.*

3

*Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596

F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination

claims in cases lacking genuine issues of material fact," *Holtz*, 258 F.3d at 69 (quoting *McLee v.*

*Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).  "Because the district court is not to resolve

issues of fact on a summary judgment motion, 'its determination of whether the circumstances

give rise to an inference of discrimination must be a determination of whether the proffered

admissible evidence shows circumstances that would be sufficient to permit a rational finder of

fact to infer a discriminatory motive.'"  *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir.

2021) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).

    **b.  Discrimination claims**

Defendant argues that Plaintiff has failed to establish a prima facie case of gender

discrimination for several reasons.[2]  (Def.'s Mem. 13.)  First, that although Plaintiff claims that

she was treated worse than her male colleagues, the male coworkers to whom Plaintiff compares

herself are not similarly situated to her, as they are less experienced.  (Def.'s Reply 2–3.)

Second, that the mistakes Plaintiff made are more serious than those made by her male

coworkers.  (*Id.*)  Third, Plaintiff's supervisor Morgante's purported attempt to prevent Plaintiff

from attending a training event, rude and dismissive behavior, tendency to make statements to

Plaintiff and later deny making them, failure to recommend Plaintiff for a performance

improvement plan, and criticism of Plaintiff's job performance in a July 2020 email, do not rise

to the level of materially adverse employment actions because these actions did not affect her

compensation, job title or responsibilities.  (Def.'s Mem. 15–17; Def.'s Reply 1–2.)  Defendant

---

[2]  The parties agree that Plaintiff is not alleging that she was subject to sexual harassment, a hostile work environment, pay discrimination, or inappropriate comments or conduct.  (Def.'s Reply 1; Pl.'s Opp'n 11.)

also argues that it had legitimate and nondiscriminatory reasons to terminate Plaintiff and that Plaintiff cannot establish that those reasons are pretextual because there is clear and undisputed evidence that her work performance had declined.  (Def.'s Mem. 17; Def.'s Reply 4.)

Plaintiff claims that she was treated worse than her similarly situated male coworkers, culminating in her termination.  (Pl.'s Opp'n 11.)  She contends that three of the four elements of a prima facie discrimination case are satisfied because: (1) she is a woman and therefore is a member of a protected class; (2) her termination constitutes an adverse employment action; and (3) she was performing her job satisfactorily.[3]  (*Id.* at 11–12.)  In support of her argument that she was performing satisfactorily, Plaintiff points out that she was given multiple raises, her most recent performance review in May of 2020 was positive, her supervisor did not view her job to be in jeopardy and did not recommend her termination, and Defendant's CEO testified that she was not terminated for performance reasons.  (*Id.* at 12.)  In addition, Plaintiff argues that the following evidence of instances of disparate treatment give rise to an inference of gender discrimination: (1) Morgante attempted to cancel Plaintiff's management training, which he had not done to any of Plaintiff's male coworkers; (2) Morgante reacted more negatively to Plaintiff's statements than to those of her male co-workers; (3) Morgante made statements to Plaintiff in their one-on-one meetings and later denied making those statements when others were present, which he did not do to Plaintiff's male coworkers; (4) Morgante sent an email criticizing Plaintiff for mistakes he claimed she made, but did not do the same when her male coworkers made more serious mistakes; (5) Morgante did not recommend Plaintiff for a performance improvement plan, as he had done for the two men he had supervised who allegedly had performance issues and for whom he also made memoranda to document performance

---

[3]  The defense does not appear to contest the first two elements.

problems.  (*Id.* at 11–15.)  In addition, Plaintiff argues that the evidence of repeated remarks and

actions by the CTO reflect a culture of discriminatory animus.  (*Id.* at 15.)  Plaintiff argues that

in light of the evidence of disparate treatment and the CTO behavior, she has established a prima

facie case of gender discrimination, (*id.* at 16), and Defendant's given reasons for terminating

Plaintiff were pretextual.  (*Id.* at 20.)  In support, Plaintiff argues that: (1) she had received

highly positive performance reviews; (2) Defendant has provided "shifting and inconsistent"

reasons for Plaintiff's termination; (3) some of the inconsistent claims made by Defendant's

witnesses concerning the reason for her termination must be false (because not both inconsistent

statements can be true); (4) Defendant's only documentation of issues with Plaintiff's

performance is an undated memorandum drafted by Morgante after he was instructed to put into

writing her purported performance problems, which is not admissible and not generated in the

regular course of business; (5) Defendant did not thoroughly investigate Plaintiff's complaints

against Morgante or the other complaints made against the CTO; (6) the CTO had engaged in

prior discriminatory conduct in the past, evincing a pattern of discriminatory and retaliatory

behavior; (7) there is an extremely close temporal connection between her complaint against

Morgante and her termination; (8) the head of HR testified at the deposition that Plaintiff's

complaints about Morgante were a cause of her termination.  (*Id.* at 20–24.)

### i.   Title VII discrimination claim

Claims of employment discrimination under Title VII are assessed using the burden-

shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).  *See Carr v. N.Y.C. Transit Auth.,* 76 F. 4th 172, 177, (2d Cir. 2023);

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (analyzing the

plaintiff's "employment-discrimination claims under . . . Title VII . . . using the now-familiar

burden-shifting framework established by the Supreme Court in *McDonnell Douglas*");

*Littlejohn v. City of New York*, 795 F.3d 297, 312–13 (2d Cir. 2015) (applying "burden-shifting

evidentiary framework set forth in *McDonnell Douglas*" to the plaintiff's "disparate treatment

claim under Title VII").    Under this framework, a plaintiff must first establish a prima facie

case of discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Ruiz*

*v. County of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  A plaintiff's burden at this stage is

"minimal."  *Holcomb*, 521 F.3d at 139 (quoting *Hicks*, 509 U.S. at 506); *see also Kelleher v.*

*Fred A. Cook, Inc.*, 939 F.3d 465, 468 (2d Cir. 2019) ("[A] plaintiff's burden to establish an

initial prima facie case is, by design, 'minimal and de minimis.'" (quoting *Woodman v. WWOR–*

*TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005))).  A plaintiff must demonstrate that she: (1) belongs to a

protected class; (2) was qualified for the position she held; (3) suffered an adverse employment

action; (4) that the employment action occurred under circumstances that give rise to an

interference of discriminatory intent.  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.

2012) (quoting *Holcomb*, 561 F.3d at 138).  If the plaintiff satisfies this initial burden, the burden

then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.

*Kelleher*, 939 F.3d at 468.  The defendant's burden "is not a particularly steep hurdle."  *Hyek v.*

*Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), *aff'd*, 461 F. App'x 59 (2d

Cir. 2012).  It "is one of production, not persuasion; it 'can involve no credibility assessment.'"

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *Hicks*, 509 U.S. at

509).  If the defendant offers a legitimate, nondiscriminatory explanation for its action, the court

may nevertheless deny summary judgment if the plaintiff presents sufficient evidence that the

explanation was pretext.  *See Williams v. Mount Sinai Med. Ctr.*, 859 F. Supp. 2d 625, 637–39,

642 (S.D.N.Y. 2012) (denying summary judgment based on Title VII plaintiff's evidence that

employer's nondiscriminatory reasons for termination were pretextual). To defeat summary judgment in a Title VII discrimination claim, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("An employee who alleges status-based discrimination under Title VII . . . [must] show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.").

### 1. Plaintiff belongs to a protected class and suffered an adverse employment action

It is undisputed that Plaintiff belongs to a protected class and her termination is an adverse action.[4]  (Def.'s 56.1 ¶ 157.)  *See Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) ("An adverse employment action [is] . . . a materially adverse change in the terms and conditions of employment such as termination." (internal quotation marks and citation omitted)).

---

[4]  Defendant argues the other proffered instances of differential treatment — Morgante's purported attempt to prevent Plaintiff from attending a training event, rude and dismissive behavior, tendency to make statements to Plaintiff and later deny making them, failure to recommend Plaintiff for a performance improvement plan, and criticism of Plaintiff's job performance in a July 2020 email — do not rise to the level of materially adverse employment action.  (Def.'s Mem. 15–17.)  *See Setelius v. Nat'l Grid Elec. Servs. LLC,* 2014 U.S. Dist. LEXIS 134789 (E.D.N.Y. Sept. 24, 2014) (finding no materially adverse change in terms and conditions of employment where the plaintiff's male supervisor excluded the plaintiff from meetings, ostracized her, criticized her work and assigned her clerical duties); *Batchelor v. City of New York*, 12 F. Supp. 3d 458, 475–76 (E.D.N.Y. 2014) (explaining that criticism does not constitute adverse employment action); *Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 232 (S.D.N.Y. 2009) (internal quotation omitted) (collecting cases) (explaining that reprimands do not constitute adverse employment actions).  However, the Court understands Plaintiff to argue that the differential treatment constitutes evidence that Plaintiff's termination was the result of gender discrimination, not that these other instances constitute adverse employment actions.  (*See* Pl.'s Opp'n 11–14.)

## 2.   Plaintiff's qualification for position

Further, while Defendant argues that Plaintiff's job performance had declined, Plaintiff has provided evidence that she performed her job satisfactorily and was qualified for the position she held, even if there is some other evidence that Plaintiff's performance had declined.  (Def.'s 56.1 ¶¶ 73–81, 92–93, 101–12, 126; Pl.'s Rule 56.1 Counter-Stmt. ("Pl.'s 56.1") ¶¶ 73–81, 92–93, 101–12, 126, 204, 206, Docket Entry No. 25-1.)  For example, her supervisor testified that "things were going well for the most part" and he did not view her job to be in jeopardy.  (Pl.'s 56.1 ¶ 92 (citing Matthew Morgante Dep. ("Morgante Dep.") 139:19–23, 140:4–7, annexed to Robert Glunt Decl. as Ex. D, Docket Entry No. 29-4).)  *See Gladwin v. Pozzi*, 403 F. App'x 603, 606 (2d Cir. 2020) (finding the plaintiff had demonstrated she had performed her duties satisfactorily given the positive remarks from coworkers and the fact that she had never received a negative evaluation).  In addition, the CEO testified that Plaintiff was not terminated because of her performance.  (Jeb Ory Dep. ("Ory Dep.") 119:22–120:9, 122:2–8, annexed to Robert Glunt Decl. as Ex. E, Docket Entry No. 29-5.)

## 3.   Inference of discrimination

Plaintiff has provided sufficient evidence of differential treatment to create an inference that discriminatory intent played a role in Defendant's decision to fire her.  *See Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) (explaining that a plaintiff may raise an inference of discrimination by demonstrating disparate treatment as compared to other employees she was similarly situated to in all material respects) (first quoting *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, *6 (S.D.N.Y. Jan. 25, 2019); and then quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  For example, Morgante sent an email criticizing Plaintiff (and copied the CTO) when Plaintiff failed to follow software

development protocol, which required her to promptly test products with pending tickets,

resulting in two software bugs being released, which Defendant had to rush to fix.  (Def.'s 56.1

¶¶ 121–26; Pl.'s 56.1 ¶¶ 121–26.)  In contrast, Morgante did not send such an email (or put any

criticism in writing) when Plaintiff's two male Quality Assurance engineers — whom Morgante

also supervised caused a significant backup resulting in software failure for multiple clients three

weeks earlier.  (Def.'s 56.1 ¶¶ 136–38; Pl.'s 56.1 ¶¶ 136–38; Kelly Austin Dep. ("Austin Dep.")

276:3–14, annexed to Robert Glunt Decl. as Ex. A, Docket Entry No. 29-1.)  While there is some

evidence that Plaintiff's mistake was more serious than the mistake made by the two male

coworkers because Plaintiff failed to follow protocol, there is other evidence that the mistake of

the two male coworkers was more serious because it impacted the performance of the product for

multiple clients — making this a disputed issue of fact.  (*See* Def.'s Reply 3 (citing Morgante

Dep. 224–25, 280–84); Pl.'s 56.1 ¶ 222; Austin Dep. 276:3–14).  Further, although Plaintiff was

more experienced than the two coworkers, and initially supervised one of them before he was

hired full time, there is at least a disputed issue as to whether Plaintiff was similarly situated to

them, given that at least one of them shared the same job title and responsibilities, and they both

shared the same supervisor.  (Morgante Dep. 92:10–21; Austin Dep. 378:20–24.)  *See Cooper v.

Templeton*, 629 F. Supp. 3d 223, 223, 231–32 (S.D.N.Y. 2022) (considering whether the selected

comparators reported to the same supervisors and had the same job titles); *Novick v. Village of

Wappingers Falls*, 376 F. Supp. 3d 318, 342–44 (S.D.N.Y. 2019) (finding that the plaintiff had

failed to allege that the other officers were similarly situated given that the mentioned officer had

a different job title and the plaintiff did not specify whether the officer had the same supervisors

or provide other facts to demonstrate that they were similarly situated); *see also Watson v.

Geithner*, Nos. 09-CV-6624, 10-CV-3948, 10-CV-7282, 2013 WL 5420932, at *10 (S.D.N.Y.

Sept. 27, 2013) (explaining that whether employees are similarly situated is ordinarily a question of fact).

This evidence of disparate treatment is sufficient to raise an inference of discriminatory intent as to Plaintiff's termination. Notably, Morgante's email to the CTO criticizing Plaintiff directly led to the course of events that culminated in Plaintiff's termination. (Pl.'s 56.1 ¶¶ 222–26.) In addition, the CTO testified that he terminated Plaintiff based on conversations with her supervisor. (Faisal Siddiqui Dep. ("Siddiqui Dep.") 105:14–16; 133:16–134:5, annexed to Robert Glunt Decl. as Ex. F, Docket Entry No. 29-6). Further, Plaintiff also presents evidence that two other male employees whom Morgante also supervised were placed on performance improvement plans for documented performance problems, and not terminated like Plaintiff. (Pl.'s 56.1 ¶ 107.) This evidence satisfies Plaintiff's prima facie case.

### 4. Pretext

Although Defendants have articulated legitimate, nondiscriminatory motives for the decision to terminate, the Court finds a reasonable jury could find that those given reasons are pretext for discriminatory intent.

Upon the defendant's showing of a legitimate, nondiscriminatory reason for the employment action, the plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *DiCesare v. Town of Stonington*, 823 F. App'x 19, 24 (2d Cir. 2020) (alterations in original) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)); *Mullins v. City of New York*, 626 F.3d 47, 53–54 (2d Cir. 2010) (applying the same framework). A plaintiff may show pretext "by demonstrating weaknesses, implausibilities,

inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action." *Palencar v. N.Y. Power Auth.*, 834 F. App'x 647, 651 (2d Cir. 2020) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 430 (2d Cir. 2016) (same).

While Defendant now argues that the company decided to terminate Plaintiff because (1) her employers had perceived a decline in her job performance in the spring of 2020, (Def.'s Mem. 17–19; Def.'s Reply 4–5), and (2) Plaintiff refused to work with her direct supervisor, (Def.'s Mem. 18–19), Defendant has provided inconsistent explanations for the decision to fire Plaintiff. Defendant initially claimed that Plaintiff's declining performance was the "sole reason" for her termination, (Equal Employment Opportunity Commission Response, annexed to Robert Glunt Decl. as Ex. M, Docket Entry No. 25-7); the head of HR stated that Plaintiff was terminated due to her declining performance and because she expressed concerns about working with Morgante, (Shelli Holland Dep. ("Holland Dep.") 78:14–23, 89:25–90:18, annexed to Joseph E. Field Decl. as Ex. I, Docket Entry No. 24-12); and the CEO testified that Plaintiff was not terminated for performance reasons,[5] (Ory Dep. 119:22–120:9, 122:2–8). Further, while the CTO testified that he discussed with Morgante the possibility of terminating Plaintiff, (Siddiqui Dep. 105:14–16), Morgante testified the CTO did not discuss this with him and stated that he was surprised to hear about the decision after the fact, (Morgante Dep. 255:17–256:10). Moreover, while the head of HR testified that the CTO told her that he wanted to terminate Plaintiff for performance problems before Plaintiff complained about Morgante, (Holland Dep. 90:4–18), the CTO testified that he did not consider terminating Plaintiff until after Plaintiff sent

---

[5] Moreover, as explained above, there is other evidence that Plaintiff was performing satisfactorily.

the rebuttal to Morgante's email and did not recommend Plaintiff's termination until after Plaintiff had her one-on-one meeting with the head of HR where she complained about Morgante, (Siddiqui Dep. 119:16–24, 123:16–21).  As Plaintiff argues, the inconsistency between the proffered justifications for her termination constitutes evidence of pretext.  *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("The inconsistency between the justifications offered for [the plaintiff's] dismissal in the two proceedings raises a genuine issue of material fact with regard to the veracity of this non-discriminatory reason.").  In addition to these inconsistent explanations and justifications for Plaintiff's termination, the evidence that the CTO, one of the decisionmakers, made a discriminatory remark to another female employee around the same time Defendant terminated Plaintiff from her position, and evidence that a different female employee had complained to HR that she believed the CTO treated her dismissively and disrespectfully because of her gender and race provide further evidence of pretext.[6]  *See Shimanova v. TheraCare of New York, Inc.*, No. 15-CV-6250, 2017 WL 980342, at *4 (S.D.N.Y. Mar. 10, 2017) ("[E]vidence of discrimination against other employees may be relevant to proving discrimination."  (citing S*print/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008))).  Thus, a reasonable jury could conclude that Defendant's proffered reasons for Plaintiff's termination are pretext and that Plaintiff's termination was based, at least in part, on discriminatory intent.  The Court therefore denies Defendant's motion as to Plaintiff's Title VII discrimination claim.

---

[6]  In June of 2020, Defendant's co-founder submitted a formal HR complaint against the CTO, stating that she believed he treated her differently because of her ethnicity and gender, and the CTO criticized another female employee in a company-wide Zoom meeting, stating that she sounded like his mother or mother-in-law.  (Def.'s 56.1 ¶ 113; Pl.'s 56.1 ¶¶ 210–11.)

### ii. NYSHRL and NYCHRL discrimination claims

Because the Court denies Defendant's motion as to the Title VII claims, and in view of

that fact that the NYCHRL and NYSHRL apply a more lenient standard than their federal

counterparts,[7] the Court also denies Defendant's motion as to Plaintiff's NYSHRL and

NYCHRL discrimination claims. *See Washington v. NYC Madison Avenue Med. P.C.*, No. 20-

CV-3446, 2023 WL 4980215, at *7 (S.D.N.Y. Aug. 3, 2023) ("Because Plaintiff meets the prima

facie case requirements under Title VII and can establish genuine disputes of material facts that

preclude summary judgment, logically, Plaintiff also meets the requirements of NYCHRL

provisions that are much more liberally construed."); *Sanderson v. Leg Apparel LLC*, No. 19-

CV-8423, 2023 WL 2753200, at *15 (S.D.N.Y. Mar. 31, 2023*), reconsideration denied*, No. 19-

CV-8423, 2023 WL 4053131 (S.D.N.Y. June 16, 2023) ("[G]iven [the plaintiff's] other

---

[7] Historically, discrimination claims under the NYSHRL were "largely subject to the same analysis [courts] apply under Title VII." *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-CV-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021) (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). However, "the NYSHRL was amended in 2019 to 'be construed liberally for the accomplishment of the remedial purpose thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.'" *Cooper v. Franklin Templeton Invs.*, No. 22-CV-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (quoting N.Y. Exec. Law § 300). "New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL," but some courts in this Circuit "have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL." *Id.* (internal quotation marks and citation omitted). The Second Circuit has not yet "resolve[d] the impact of these amendments." *Id.* The amendments apply to Plaintiff's claims because her claims accrued after October 11, 2019, *see Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019), but Plaintiff states the differences are not material to Defendant's motion, (*see* Pl.'s Opp'n 9 n.2 (citing *Teasdale v. N.Y.C. Fire Dep't*, 574 F. App'x 50, 51 (2d Cir. 2014)).) Because the Court finds a reasonable jury could find gender discrimination under Title VII's more stringent standard, the Court does not need to resolve the effect of the amendments. *Cooper*, 2023 WL 3882977 (declining to "resolve the impact of the[] amendments . . . because [the Court] conclude[s] that [plaintiff's] employment discrimination claim falls short even under the NYCHRL's more liberal standards").

14

allegations concerning his differential treatment compared to [another coworker], summary judgment will be denied as to his NYCHRL discrimination claim.").

### c.    Retaliation claims

Defendant argues that Plaintiff's retaliation claims based on her termination, and her claim based on the reversal of her final paycheck, should be dismissed.  (Def.'s Mem. 19–25.)  Plaintiff argues that her retaliation claims survive summary judgment.  (Pl.'s Opp'n 16–20.)

### i.    Retaliation claim based on Plaintiff's termination

Defendant argues that Plaintiff fails to establish Title VII retaliation because she did not complain of gender discrimination and therefore did not engage in legally protected activity when she responded to Morgante's email, or when she complained to HR in August of 2020. (Def.'s Mem. 20–22; Def.'s Reply 8.)  In addition, Defendant argues that even if such actions constitute protected activity, they were not the but-for cause of Plaintiff's termination, as Defendant had been considering terminating her prior to the purported protected conduct. (Def.'s Mem. 22.)  In support, Defendant argues that it ultimately decided to fire Plaintiff on August 13, 2020, after Plaintiff told the head of HR that she refused to work with Morgante moving forward,[8] and before she told the head of HR that she felt "singled out" by Morgante on August 17, 2020.  (*Id.* at 22.)  Defendant argues that, even if Plaintiff is able to satisfy her prima facie case of retaliation, she cannot show that Defendant's legitimate, nondiscriminatory reasons for terminating her employment were pretextual because her job performance, and refusal to work with her direct supervisor, not the purportedly protected conduct, gave rise to her termination.  (*Id.* at 23.)  In support of its argument against pretext, Defendant argues that

---

[8]  Defendant also argues that Plaintiff's refusal to work with her supervisor constituted an intervening causal event between the protected activity and discharge that severed any inference of causation.  (Def.'s Mem. 23.)

temporal proximity between any protected activity and adverse action does not constitute sufficient evidence of pretext to survive summary judgment.  (*Id.*)  Defendant also makes the same arguments with regard to the discrimination claim in support of its argument that Plaintiff fails to show pretext as to her retaliation claims.

Plaintiff argues that: (1) she participated in protected activity when she told HR that she had received worse treatment by her supervisor for making mistakes than "two male engineers," (Pl.'s Opp'n 16–17 (citing Pl.'s 56.1 ¶ 224)); (2) Defendant knew of her complaint because it investigated to determine whether the complaint had any legitimate basis, (*id.* at 18 (citing Ory Dep. 170:4–9)); (3) and her termination constitutes an adverse action, (*id.*)  In addition, Plaintiff argues that the fact that Defendant decided to terminate her employment on the same day she made complaints about Morgante, and that the complaints were mentioned during the termination meeting, demonstrate a causal connection between her complaint and her termination.  (*Id.* at 18–20.)  Further, Plaintiff argues that Defendant's justification for her termination is pretextual for the same reasons they are with regard to her discrimination claim.  (*Id.* at 20–24.)

### 1.    Title VII retaliation claim

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a); *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. 2020) ("Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)))  Title VII retaliation claims are evaluated using the *McDonnell Douglas* burden-shifting framework outlined above.  *Carr*, 76 F.4th at 178; *Russell v. N.Y. Univ.*, 739 F.

App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  Under the framework, the plaintiff must first establish "a *prima facie* case of retaliation."  *Id.* (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 315–16 (quoting *Hicks*, 593 F.3d at 164).  If the plaintiff sustains this initial "*de minimis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164).  "If the defendant does so, then the burden shifts back to the plaintiff[] . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'"  *Id.* (quoting *Ya-Chen Chen*, 805 F.3d at 70).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Duplan*, 888 F.3d at 625 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015)).

Plaintiff has established a prima facie case for retaliation.  First, Plaintiff has demonstrated that she engaged in protected activity that Defendant was aware of — she complained to the head of HR of differential treatment as compared to two of her male coworkers.  (Austin Dep. 294:15–295:22; Def.'s Mem. 9.)  After Morgante sent an email to Plaintiff with a copying to the CTO, criticizing Plaintiff's performance on July 28, 2020,

Plaintiff responded the following day defending herself.  (Def.'s 56.1 ¶¶ 125–26.)  Then, on

August 13, 2020, Plaintiff spoke with the head of HR and complained that Morgante had treated

her differently than her male coworkers who were not written up for making a similar significant

mistake weeks earlier.  (Def.'s 56.1 ¶¶ 136–38; Pl.'s 56.1 ¶¶ 136–38.)  The Court finds this

complaint challenged gender discrimination and therefore constitutes protected activity.  *See*

*Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015) (filing either a formal

or informal complaint challenging discrimination is a protected activity for purposes of

retaliation claims under Title VII).  The complaint at least implicitly alerted Defendant that

Plaintiff was complaining of gender discrimination.  *C.f. Fattoruso v. Hilton Grand Vacations*

*Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (finding that the plaintiff failed to demonstrate that

the defendant had knowledge of his protected activity because his complaints "did not implicitly

or explicitly alert [the defendant] that he was complaining of disparate treatment based on sex —

and thereby was engaging in a protected activity").  Further, given that Plaintiff made her

complaint to the head of HR, who relayed the complaint to management, Defendant had

knowledge that Plaintiff had engaged in this protected activity prior to terminating Plaintiff.  *See*

*Zann Kwan*, 737 F.3d at 844 ("[F]or purposes of a prima facie case, a plaintiff may rely on

'general corporate knowledge' of her protected activity to establish the knowledge prong of the

prima facie case.").

In addition, six days later, Defendant terminated Plaintiff's employment.[9]  *Davis-Garett*,

921 F.3d at 44 (defining, for the purposes of a retaliation claim, adverse employment actions as

actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from

---

[9]  There is some evidence that Defendant decided to terminate Plaintiff's employment the
same day Plaintiff made the complaint to HR, while other evidence suggests that Defendant
made the final decision four days later.  (Def.'s 56.1 ¶¶ 150, 152.)

complaining of unlawful discrimination." (first quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); and then citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  Given the temporal proximity between her complaint and her termination, Plaintiff has shown a causal connection between the protected act and the materially adverse employment action.  *See Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) ("Proof of such a causal connection 'can be established "directly through evidence of retaliatory animus directed against a plaintiff," or "indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . such as disparate treatment of fellow employees who engaged in similar conduct."'" (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by White*, 548 U.S. at 53)); *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (setting forth the same two paths to establishing a causal connection).

While Defendant has articulated legitimate and nonretaliatory reasons for Plaintiff's termination — specifically that her performance had declined and that she refused to work with her supervisor — Plaintiff has presented sufficient evidence from which a reasonable juror could find that Defendant's reasons are pretext for retaliation.  There are disputed issues of fact as to whether Defendant fired Plaintiff because she complained about discrimination or because her performance declined and she refused to work with her supervisor.  While some of Defendant's witnesses testified that they terminated Plaintiff because Plaintiff told the head of HR that she refused to work with Morgante, Plaintiff disputes that she refused to do anything and testified

19

that she merely requested that someone from HR be present during her meetings with Morgante.[10]  (Def.'s 56.1 ¶¶ 140, 142; Pl.'s 56.1 ¶¶ 140, 142.)

　　　Further, as explained above with regard to Plaintiff's Title VII discrimination claim, Defendant's inconsistent and shifting explanations for the decision to terminate Plaintiff's employment provide evidence of pretext.  *See Zann Kwan*, 737 F.3d at 846 ("[A] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action[s].").  Initially, Defendant claimed that Plaintiff's declining performance was the "sole reason" for her termination, (Equal Employment Opportunity Commission Response), but the head of HR stated that Plaintiff was terminated due to her declining performance and because she expressed concerns about working with Morgante, (Holland Dep. 78:14–23), while the CEO testified that Plaintiff was not terminated for performance reasons,[11] (Ory Dep. 119:22–120:9, 122:2–8.)  In addition, while Defendant contends that it had already begun moving forward with Plaintiff's termination prior to Plaintiff engaging in protected activity, Defendant's witnesses testified that they initially decided to terminate Plaintiff on August 13, 2020, after Plaintiff spoke with the head of HR about her complaint.  (Def.'s 56.1 ¶ 150.)  Moreover, the fact that the head of HR told Plaintiff in the

---

[10]  In an email Plaintiff sent to the head of HR four days after Plaintiff's conversation with the head of HR regarding Morgante, Plaintiff said she was not comfortable meeting one-on-one with Morgante.  (Aug. 17, 2020 Email, annexed to Shelli Holland Decl. as Ex. F, Docket Entry No. 24-29.)  However, according to some of the evidence, the decision to terminate Plaintiff had already been made at that point, (Def.'s 56.1 ¶ 150), and the contours of the earlier oral conversation are disputed.

[11]  Moreover, as explained above, there is other evidence that Plaintiff was performing satisfactorily.

beginning of the meeting on August 19, 2020, when they advised Plaintiff of the termination decision, that she had looked into Plaintiff's allegations of unequal treatment and did not find anything to substantiate them, (*id.* at ¶ 158.), also provides evidence that Defendant terminated Plaintiff because she complained of differential treatment.   Thus, the Court denies Defendant's summary judgment motion as to Plaintiff's retaliation claims.

### 2.   NYCHRL and NYSHRL retaliation claims

Because Plaintiff's Title VII retaliation claim survives summary judgment, Plaintiff's NYSHRL and NYCHRL retaliation claims also survive summary judgment.[12]  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (noting that under NYCHRL, "the plaintiff must show that . . . the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action"); *Pouncy v. Advanced Focus LLC*, No. 15-CV-6260, 2017 WL 4280949, at *6 (S.D.N.Y. Sept. 25, 2017) (explaining that "[t]he elements of a prima facie case of retaliation under the NYCHRL are identical [to Title VII's], except that the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity" (internal quotation marks omitted)); *c.f. Lettieri v. Anti-Defamation League Found.*, 2023 WL 5152447, at *13 n.15 (S.D.N.Y. Aug. 10, 2023) (dismissing plaintiff's Title VII and NYSHRL claims because it had dismissed Plaintiff's NYCHRL claim under the more lenient standard).

---

[12]  *See* footnote 7, *supra*.

ii.   **Retaliation claim based on the reversal of Plaintiff's final direct deposit**

Defendant argues that Plaintiff's retaliation claim based on the reversal of her final direct

deposit must be dismissed because: (1) Plaintiff's paycheck was handled exclusively and

independently by a third party, which had no knowledge of Plaintiff's complaints or involvement

in Plaintiff's termination; and (2) Plaintiff did not suffer an adverse employment action as the

third-party only reversed the direct deposit because it included dates after her termination, before

promptly sending her a paycheck for the correct amount.  (Def.'s Mem. 24–25.)  Defendant also

argues that the corrected paycheck is dated August 31, 2020, two days before counsel sent the

letter demanding payment of Plaintiff's salary.  (Def.'s Reply 10.)

Plaintiff argues that Defendant retaliated against her after her attorney sent a demand

letter to Defendant by reversing Plaintiff's last direct deposit transaction, and taking money from

her for work she had already performed.  (Pl.'s Opp'n 24–25.)  In response to Defendant's

argument that Plaintiff's direct deposit payment was reversed because she was paid for days she

did not work, Plaintiff argues that Defendant's reversed her paycheck as an act of retaliation.

(*Id.*)  In support, Plaintiff argues that Defendant: (1) had ample notice to correct the direct

deposit, but only reversed the direct deposit after her attorney sent the demand letter; (2)

withdrew all the money paid to Plaintiff, rather than the amount overpaid; and (3) did not initiate

a direct deposit with the corrected amount until Plaintiff's counsel wrote a letter to Defendant

demanding payment of her salary a few days later.  (*Id.*)

1.   **Title VII claim**

As Defendant argues, the undisputed evidence establishes that: (1) TriNet, a third-party,

handled the distribution of the paychecks without any instruction of Defendant; (2) Plaintiff

initially received a direct deposit for an amount that included dates she did not work; (3) TriNet

22

reversed the direct deposit; and (4) TriNet sent a paycheck with the corrected amount on August 31, 2020, two days before Plaintiff's counsel sent the letter demanding payment of her salary. (Def.'s 56.1 ¶¶ 162–67; Pl.'s ¶¶ 162–67, 227–30; Angela Dickens Decl. ¶ 3, Docket Entry No. 33; Ex. I, annexed to Joseph E. Field Reply Decl., Docket Entry No. 34-9.)  Even assuming this reversal could dissuade an employee from engaging in the protected act, there is no evidence that the act is connected to any protected activity, given that the uncontroverted evidence shows that TriNet handled the distribution of paychecks without direction from Defendant.  Thus, the Court grants Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim based on Plaintiff's final paycheck.

### 2.   NYSHRL and NYCHRL claims

Because the paychecks were issued by a third party and there is no evidence that Defendant ordered the third party to reverse the direct deposit, the NYSHRL and NYCHRL claims also fail.[13]  *See Dixon v. Int'l Fed'n of Accts.,* 416 F. App'x 107, 110 n.1 (2d Cir. 2011) ("[The plaintiff's] retaliation claim under the NYCHRL fails as a matter of law because she did not produce any admissible evidence to demonstrate a causal connection between her protected activity and any allegedly adverse action.").

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's Title VII, NYSHRL and NYCHRL retaliation claims based on the reversal of her direct deposit; and denies Defendant's motion as to Plaintiff's Title VII, NYSHRL and

---

[13]  As discussed above in footnote 7, the NYSHRL was recently amended and some courts have found that the amendment brings the standard closer to the more lenient NYCHRL standard.

NYCHRL gender discrimination claims and as to Plaintiff's Title VII, NYSHRL and NYCHRL

retaliation claims based on her termination.

Dated:  September 21, 2023
         Brooklyn, New York

                                    SO ORDERED:


                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge